**AMANA REFRIGERATION, INC.**

v.

**UNITED STATES.**

No. 324–57.

United States Court of Claims.
Jan. 18, 1961.

Raymond C. Cushwa, Washington, D. C., for plaintiff. Alfons B. Landa, Simmons, Perrine, Albright, Ellwood & Neff, and Davies, Richberg, Tydings, Landa & Duff, Washington, D. C., were on the briefs.

John F. Palmer, Washington, D. C., with whom was Asst. Atty. Gen. Charles K. Rice, Washington, D. C., for defendant. James P. Garland and Lyle M. Turner, Washington, D. C., were on the briefs.

WHITAKER, Judge.

This is a suit for refund of excess profits taxes for the calendar year 1951 in the amount of $3,625.15.

The sole issue is whether the Internal Revenue Code of 1939, section 433(a) (1) (O),[1] as added by the Excess Profits Tax Act of 1950, 26 U.S.C.A. Excess Profits Taxes, § 433(a) (1) (O), required plaintiff, in determining its excess profits tax, to add back to its net income the amount of $21,015.32, representing 75 percent of the interest paid on borrowed capital in

the taxable year, thus increasing its excess profits net income to $1,343,266.41.[2]

In computing its net income for the calendar year 1951, plaintiff deducted $28,088.22, as interest paid on indebtedness during the year. In computing its excess profits tax for 1951, plaintiff added back to its net income of $1,322,251.09, as shown on its return, the sum of $21,015.32, which represented 75 percent of the interest paid on borrowed capital. This interest adjustment resulted in an increase in plaintiff's excess profits tax of $3,625.15. Later in 1953 and again in 1957, plaintiff filed claims for refund on the ground that the interest adjustment was not required and should not have been made. No action was taken on the 1953 claim. The 1957 claim, which was substantially the same as the 1953 claim, was disallowed.

Section 430(a) imposed an excess profits tax on corporations for years ending after June 30, 1950, and beginning before January 1, 1954. Under section 430(a), the tax was the lesser of the amounts computed under subsections (1), (2), and (3). Subsection (1) provided for a tax of 30 percent of the "adjusted excess profits net income", which was defined by section 431 to be the excess profits net income less the "excess profits credit" and the "unused excess profits credit." The "excess profits credit" was defined by section 434 to be that amount computed under section 435 or section 436 whichever results in the lesser tax. In the case of this taxpayer, this was section 435.

---

1. 64 Stat. 1139, 1143:
"Sec. 433. Excess Profits Net Income.
"(a) *Taxable Years Ending After June 30, 1950.*—The excess profits net income for any taxable year ending after June 30, 1950, shall be the normal-tax net income, as defined in section 13(a) (2), for such year increased or decreased by the following adjustments:
"(1) *Adjustments.*—

\*  \*  \*  \*  \*

"(O) Interest.—Credit Based Upon Income.—If the excess profits credit for the taxable year is computed under section 435, the deduction for interest shall be reduced by an amount which bears the same ratio to the interest on the

indebtedness included in the daily amounts of borrowed capital (determined under section 439(b)) as the excess of the amount determined under section 435 (g) (3) (C) over the aggregate, divided by the number of days in the taxable year, of the amount determined under section 435(g) (4) (E) for each day of the taxable year, bears to the average borrowed capital for the taxable year (as defined in section 439(a)). \*  \*  \*

2. As a result of certain adjustments not pertinent to this litigation, plaintiff's net income was increased to $1,355,975.60. If 75 percent of the interest deducted is to be added back, the excess profits net income will amount to $1,376,990.92.

Computed under that section, the credit was 83 percent of the average base period net income, plus the difference between 12 percent of the net capital addition and 12 percent of the net capital reduction.

The taxpayer first computed its tax under subsection 430(a) (1). So computed, it was less than it was computed under subsection 430(a) (2). The taxpayer then computed it in the way prescribed by subsection 430(a) (3), since it was a "new" corporation, as defined by section 430(e), which was added to the 1939 code by section 501 of the Revenue Act of 1951 (65 Stat. 541).[3] Subsection 430(a) (3) required a computation under section 430(e).

Under section 430(e), the tax was computed at graduated percentages[4] of the "excess profits net income", and not of the "adjusted excess profits net income", as in the case of the computation under section 430(a) (1).

Excess profits net income was defined by section 433(a) as the normal tax net income for such year, increased or decreased by certain adjustments. We are only concerned with the adjustment for interest paid on borrowed capital, as provided in section 433(a) (1) (O). This subsection required an adjustment on account of interest on borrowed capital, when the *excess profits credit* was computed under section 435 (average base period net income method). Plaintiff says that its excess profits tax was and should have been determined under section 430(e) and that an excess profits credit did not in any way enter into the computation of the tax under such section, and, hence, since section 433(a) (1) (O) was specifically conditioned on the use of an excess profits credit, computed under section 435, it was inapplicable.

We think that section 433(a) (1) (O) did not require that a portion of the interest paid on borrowed capital be added back to the normal tax net income to arrive at the excess profits net income, where a "new" corporation was entitled to compute its excess profits tax under section 430(e), because, as plaintiff says, an excess profits credit did not enter into the computation of its tax under that subsection. The statute required the adding back of a portion of the interest on borrowed capital only where an excess profits credit was deducted to ascertain the amount by which the tax was measured.

The reason for the requirement of an adjustment for interest on borrowed capital was that when the taxpayer used an excess profits credit in computing its tax, a percentage of the borrowed capital upon which such interest was paid was used in determining the credit and, therefore, in order to prevent a double deduction, a proportionate amount of the interest deduction, allowed in determining normal tax net income, was required to be added back to income to arrive at the proper amount on which the excess profits tax should be computed.

That plaintiff had to compute its excess profits credit to determine the tax under section 430(a) (1) on its *adjusted* excess profits net income, so that it could compare this with the tax as determined under section 430(e), to see which method resulted in the lesser tax, is of no consequence because the tax so computed was not the tax required to be paid.

Midland Bean Co. v. Commissioner, 25 T.C. 1142, and Best Lock Corp. v. Commissioner, 31 T.C. 1217, have no application in this case. Those cases involved the use of an excess profits credit which was computed in the way prescribed, but if this computation did not produce a

3. Plaintiff was incorporated under the laws of Iowa on December 30, 1949, and commenced business in January 1950. It commenced business after July 1, 1945, and its fifth taxable year ended after June 30, 1950, and as such it was entitled to compute its excess profits tax under this section, which was made a

part of section 430(a) by subsection (3) thereof.

4. 1951 was plaintiff's second year of business. Its tax, therefore, was 5 percent of the first $300,000 of its excess profits net income and 17¼ percent of the excess over $300,000. Internal Revenue Code of 1939, section 430(e).

credit of $25,000, the taxpayer was entitled to a minimum credit of this amount anyway. On the contrary, plaintiff's tax was imposed upon its excess profits net income which did not take into account any excess profits credit.

Defendant relies on Rev.Rul. 54–534, 1954–2 Cum.Bull. 250, and Rev.Rul. 55–376, 1955–1 Cum.Bull. 421. These rulings of the Internal Revenue Service dealt primarily with the question of whether section 433(a) (1) (O) required an adjustment for interest on borrowed capital where the minimum credit was used, as in Midland Bean Co., supra, and Best Lock Corp., supra. Neither of these rulings set out any substantial reasons for holding that an interest adjustment is required in the case of a new corporation computing its tax under section 430 (e), nor can we find any authority in the Internal Revenue Code of 1939 or the regulations promulgated thereunder, to support such a holding. In fact, the regulations indicate the contrary. Regulations 130, section 40.433(a)–1 [5] states in part:

> "[T]he adjustment provided by section 433(a) (1) (O) applies exclusively to the case of a taxpayer computing its excess profits credit on the basis of income under section 435."

Plaintiff, in computing its tax under section 430(e) used no excess profits credit; consequently, its excess profits net income, upon which the tax was computed under this section, should have been determined without regard to section 433(a) (1) (O). The bare statement in defendant's brief that the lower rates prescribed by section 430(e) took into consideration an excess profits credit is entirely unsupported by the language of the statute or by its legislative history. The only statement in the committee reports bearing on the question is the statement in the Senate Finance Committee Report (S.Rep. 781, 82d Cong., 1st sess., p. 72) that it was intended to give "new" corporations preferential rates in order to enable them to get started. At first the rates for a new corporation were quite low but they increased as the years passed until they were the same as those which other corporations were required to use.

We conclude, therefore, that the interest adjustment was erroneous. Plaintiff's motion for summary judgment is granted, and defendant's motion for summary judgment is denied.

Judgment for plaintiff will be entered in the amount of $3,625.15 with interest thereon as provided by law.

It is so ordered.

JONES, Chief Judge, and DURFEE, LARAMORE and MADDEN, Judges, concur.